UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
CE INTERNATIONAL RESOURCES
HOLDINGS LLC,

                          Petitioner,              12 Civ. 8087 (CM)

    -against-

S.A. MINERALS LTD. PARTNERSHIP,
TANTALUM TECHNOLOGY, INC.,
and YEAP SOON SIT,

                          Respondents.
-------------------------------------------------------------x

## DECISION AND ORDER GRANTING PETITIONER'S APPLICATION FOR CONFIRMATION AND ENFORCEMENT OF THE INTERIM ARBITRAL AWARD

McMahon, District Judge.

Petitioner comes before this Court seeking confirmation and enforcement of an interim arbitral award. For the reasons set forth herein, Petitioner's application is GRANTED.

### BACKGROUND

Petitioner is engaged in an ongoing arbitration against Respondents, two foreign corporations and a non-US national, in New York.[1] On October 26, 2012, the arbitrator issued an interim award providing for two provisional measures. First, Respondents were ordered to post security in the amount of $10 million, based on the arbitrator's finding that Petitioner was likely to succeed on the merits. That finding is preliminary and subject to change. Second, Respondents were enjoined from transferring any assets located anywhere in the world up to the amount of $10 million in the event that they failed to post the ordered security.

---

[1] Tantalum Technology, Inc. ("Respondent") is the only respondent that has appeared or filed opposition papers in this case. Respondent's counsel has advised the Court that counsel for the other respondents are without client authority to do so. Therefore, there is no opposition to confirmation of the award from Respondents S.A. Minerals Ltd. Partnership or Yeap Soon Sit.

1

Petitioner filed its application for confirmation and enforcement on November 7, 2012. It apparently encountered some difficulty serving Respondents because, on November 20, Petitioner moved by order to show cause for approval of service of process on Respondents' counsel. Respondent Tantalum (hereinafter "Respondent") appeared at the emergency hearing on November 28, and the Court directed service on counsel. During the hearing, Respondent's counsel insisted that the Court was without power to confirm the security award and the implementing injunction, and the Court set an expedited briefing schedule.

On November 30, the Court held a hearing on the petition to confirm the interim award. The Court, which had been working on the merits of the matter since the November 20 hearing (without waiting for the completion of briefing – as is customary in connection with emergency applications) had drafted a decision, which it read into the record. The decision denied Petitioner's application and set aside the interim order, on the ground that the arbitrator had acted in manifest disregard of the law. The parties' contract stipulated that it was to be enforced in accordance with New York law, and New York does not permit a plaintiff in an action for money judgment to obtain pre-judgment security or a so-called *Mareva* injunction restraining the defendant's assets *pendente lite*.[2]

Petitioner immediately made an oral motion for reconsideration, on the ground that the Court appeared to have overlooked an argument that appeared in Petitioner's Reply papers (styled "Rejoinder") – a document that had been filed on the evening of November 29 (ECF No. 14). In that document Petitioner argued, for the first time, that the arbitrator's interim award should be confirmed because the parties had agreed that the arbitrator had the power to award

---

[2] I rejected Respondent's contention that the Court was without power to enforce the "interim" award, because the subject matter of the award – security – is widely recognized to be severable and separately enforceable from the underlying dispute. *See Metalgesellschaft AG v. M/V Capitan Constante*, 790 F. 2d 280, 283 (2d Cir. 1986); *British Ins. Co. of Cayman v. Water Street Ins. Co.*, 93 F. Supp. 2d 506, 514 (S.D.N.Y. 2000).

2

interim security pursuant to the agreed-upon arbitral rules – specifically, Article 21 of the American Arbitration Association ("AAA") International Dispute Resolution Procedures ("IDRP"). The Court did not see the Rejoinder until Petitioner's counsel mentioned it at the hearing.

It is improper in this district and this circuit to introduce new arguments in reply. *See United States v. Gabriel*, 125 F.3d 89, 100 n. 6 (2d Cir. 1997) ("Because this argument was not raised in his initial brief . . . the argument is waived.") *overruled in part on other grounds by Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005); *Admerasia, Inc. v. U.S. Postal Service*, No. 00-9784, 2004 WL 895552, at *4 n. 5 (S.D.N.Y. Apr. 27, 2004) ("A party may not raise an argument for the first time on reply."). Petitioner did not argue what turns out to be the dispositive issue in his opening brief, and so it was not addressed by Respondent in its responsive papers. Furthermore, the argument about the IDRP rules is mentioned only in passing in the Reply brief; it is proffered chiefly by attaching to the Reply brief that mentioned it in passing a lengthy single-spaced submission to the arbitrators that discusses numerous issues, this one among them.

Respondent argues that the new argument should be ignored because it was interposed in violation of the rules and precedents cited above. It is, frankly, tempting to order that remedy. The Court did not wait for full briefing to start working on what was presented to it as an emergency application; it worked on this matter from the first day the order to show cause was submitted. It did so without having any idea about the IDRP argument that was interposed for the first time only hours before a decision issued. Had the argument been in the original moving papers, as it should have been, this do-over, which interrupts the Court's busy schedule, could have been avoided.

3

However, once the Court learned of the argument, I gave Respondent the opportunity to respond to it. It is the better part of valor to overlook the blatant violation of the rules (not to say, sharp practice) and address the argument on its merits.

## DISCUSSION

A federal court lacks authority to enforce an interim award. *Michaels v. Mariforum Shipping S.A.*, 624 F. 2d 411, 414 (2d Cir. 1980). However the styling of an award as "interim" does not insulate it from review if it finally determines a severable issue in the case. *Metalgesellschaft AG v. M/V Capitan Constante*, 790 F. 2d 280, 283 (2d Cir. 1986).

Petitioner takes the position that this award finally determines the issue of pre-judgment security, and so is enforceable, notwithstanding that it does not finally determine the issue of liability on the merits. Petitioner cites some authority for this proposition, including decisions by two of my colleagues, Judges Buchwald and Nathan. Respondents insist that the interim award is not enforceable because it "does not resolve finally the issues submitted to the Arbitrator, *i.e.*, whether the Respondents breached the contracts at issue, and, if so, the amount of damages owed to [Petitioner]." (Resp. Opp'n at 3.)

I agree with Judge Buchwald, who, in *British Ins. Co. of Cayman v. Water Street Ins. Co.*, 93 F. Supp. 2d 506, 514 (S.D.N.Y. 2000) held that an award of temporary equitable relief, such as a security award, was separable from the merits of the arbitration, and thus subject to federal review.

The interim award provides for an award of pre-judgment security and a so-called *Mareva*-style injunction preventing respondent from transferring any assets, wherever located, up to the amount of $10 million until that security is posted.

4

The parties' arbitration agreement is a general agreement that does not specifically provide for the posting of security pending a final award in arbitration. However, the contract containing the arbitration clause at issue provides, in pertinent part, that the parties "agree to submit such controversy for arbitration before the American Arbitration Association in New York, NY USA. The arbitration proceedings shall be conducted before a panel of three arbitrators and shall be governed by the rules and procedures of the American Arbitration Association for . . . international commercial arbitration." (Goldstein Decl., Ex. 4 § 8.)

Article 21 of the IDRP provides that:

> 1. At the request of any party, the tribunal may take whatever interim measures it deems necessary, including injunctive relief and measures for the protection or conservation of property.
>
> 2. Such interim measures may take the form of an interim award, and the tribunal may require security for the costs of such measures.
>
> 3. A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.
>
> 4. The tribunal may in its discretion apportion costs associated with applications for interim relief in any interim award or in the final award.

By consenting to proceeding in accordance with the IDRP (and Respondent does not suggest that any other procedures apply), the parties agreed that the arbitrators could issue an award that provides for interim security. It also grants the arbitrator power to award injunctive relief as an interim measure.

Respondent argues that the parties' adoption of the IDRP does not warrant the conclusion that the arbitrator acted within his powers in ordering interim security, because the parties agreed that the contract was to be construed "and enforced" in accordance with New York law. Respondent contends that, under New York law, a party who has not yet obtained a judgment for money damages cannot be placed in the position of a secured creditor by obtaining an order of

5

pre-judgment security. *Credit Agricole Indosuez v. Rossiyski Kredit Bank*, 94 N.Y.2d 541 (2000); *Winter v. Brown*, 853 N.Y.S.2d 361 (N.Y. App. Div. 2008).

Respondent is incorrect. It lay with the parties to confer on the arbitrator whatever powers they wished. Having adopted rules that allowed the arbitrator to award interim security, Respondents are bound by their bargain. Nothing about enforcing an order rendered in accordance with the procedures to which the parties agreed offends either New York law or New York public policy.

In *Banco de Seguros del Estado v. Mutual Marine Offices, Inc.*, 344 F. 3d 255 (2d Cir. 2003), the case on which Petitioner principally relies, the Second Circuit affirmed a district court's confirmation of an interim award ordering respondent to post and maintain a contractually mandated letter of credit (a form of security) *pendente lite*. The case is pertinent in several respects.

First, the Circuit concluded, as had the district court, that the interim security issue was severable from the main issues being arbitrated and so reviewed that order prior to the entry of a final award.

Second, the Circuit enforced the terms of the parties contract – which expressly provided for the posting of interim security in the form of a letter of credit – over the petitioner's objections that the arbitrators had exceeded their authority, manifestly disregarded the law, and violated public policy and principles of fundamental fairness. It said, "It is not the role of the courts to undermine the comprehensive grant of authority by prohibiting an arbitral security award that ensures a meaningful final award," when the parties had provided for such a contingency. *Id.* at 262. Elsewhere, the Second Circuit has said that "arbitrators have power to fashion relief that a court might not properly grant," as long as they stay within the powers

6

granted to them by the contract at issue. *Sperry Int'l Trade, Inc. v. Gov't of Israel*, 689 F.2d 301, 306 (2d Cir. 1982).

The arbitrator in this case was acting within his power to conduct the proceedings in accordance with the IDRP. The parties so stipulated in their agreement. While the contract does not expressly provide for the posting of pre-judgment security – unlike the contract in *Banco*, where the issue is clearer – the parties' agreement to the IDRP rules, without exception for the rules that allow an arbitrator to order interim security, means that they conferred on the arbitrator the necessary authority to issue the interim award here sought to be enforced. That is true even though, had the underlying action been brought in this court or in the New York State Supreme Court, no such interim security could have been ordered. It is not contrary to the public policy of the State of New York to enforce the terms of an agreement freely reached by sophisticated parties. *Westinghouse Elec. Corp. v. New York City Transit Auth.*, 82 N.Y.2d 47, 53-54 (1993) ("It is firmly established that the public policy of New York State favors and encourages arbitration and alternative dispute resolutions. . . . Thus, it has long been the policy of the law to interfere as little as possible with the freedom of consenting parties to achieve that objective.") (internal citation, quotation marks, and editing omitted).

The *Mareva*-style injunction presents a thornier issue. Both federal and New York courts are without power to issue them in the context of litigation pending before those courts. *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999); *Credit Agricole*, 94 N.Y.2d at 545-46. However, the reason the courts are without power to *issue* such injunctions is that such relief would contravene the usual rule that pre-judgment security is not allowed in actions for money damages pending in the courts.

In both *Grupo Mexicano* and *Credit Agricole*, the parties had agreed to submit any disputes arising out of the contracts at issue to a New York trial court – this district in *Grupo Mexicano* and New York State Supreme Court in *Credit Agricole*. Neither case involved an arbitration, and neither addressed the power of arbitrators to grant interim relief – or of a court to enforce an award that did not exceed the arbitrator's authority. In both cases, the trial court entered a *Mareva* injunction prohibiting the defendants from dissipating, disbursing, transferring, conveying, encumbering, or otherwise distributing their assets. *Grupo Mexicano*, 527 U.S. at 312-13; *Credit Agricole*, 94 N.Y.2d at 544. The Supreme Court and the New York State Court of Appeals ultimately held that trial courts are without power to order such relief, due to "the historical principle that before judgment (or its equivalent) an unsecured creditor has no rights at law or in equity in the property of his debtor." *Grupo Mexicano*, 527 U.S. at 330; *accord Credit Agricole*, 94 N.Y.2d at 545.

But where, as here, the parties have agreed that the arbitrator has the power to issue what is, in effect, an extra-legal remedy, the policies underlying *Grupo Mexicano* and *Credit Agricole* are not implicated. Furthermore, in the arbitral context, there is a strong countervailing policy of enforcing arbitral awards in accordance with their terms, as long as the arbitrators have not exceeded their powers. *Wall Street Assoc., L.P. v. Becker Paribas, Inc.*, 818 F. Supp. 679, 682 (S.D.N.Y. 1993) ("We note at the outset the oft-stated federal policy, embodied in the Federal Arbitration Act, 9 U.S.C. § 1 et seq., favoring the enforcement of arbitration agreements and the confirmation of arbitration awards.") (citing *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220 (1987); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)). "The federal policy favoring the liberal enforcement of arbitration clauses . . . applies with particular force in international disputes." *Paramedics Electromedicina Comercial, Ltda v. GE*

8

*Med. Sys. Info. Tech., Inc.*, 369 F.3d 645, 654 (2d Cir. 2004). And, as the Second Circuit has noted, "Arbitrators are presumptively free from principles of substantive law." *J.B. Harris, Inc. v. Razei Bar Industries, Ltd.*, 181 F.3d 82, at *2 (2d Cir. 1999) (internal quotation marks omitted).

Here, under Article 21 of the IDPR, the arbitrator is expressly empowered to "take whatever interim measures [he] deems necessary, including injunctive relief and measures for the protection or conservation of property." In the context of arbitration, the public policy favoring the enforcement of arbitration agreements and the confirmation of arbitral awards trumps any other – which may be why Respondent has not cited the Court to a single case in which a court has refused to enforce an arbitral award that orders a *Mareva*-style injunction. *Cf. Prudential Sec., Inc. v. American Capital Corp.*, No. 96 Civ. 440, 1996 WL 280830, at *5 (S.D.N.Y. May 15, 1996) (holding that, to the extent sections of the New York General Obligations Law reflect New York public policy, "that public policy is insufficient to trump the federal policy favoring arbitration"); *Westinghouse*, 82 N.Y.2d at 53-54.

## CONCLUSION

For the reasons set forth above, Petitioner's application for confirmation and enforcement of the interim arbitral award is GRANTED.

Dated: December 10, 2012

_____
U.S.D.J.

BY ECF TO ALL COUNSEL